UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVA LEWIS,

        Plaintiff,                    Case No. 2:15-cv-13903
                                            Judge Nancy G. Edmunds
v.                                       Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 10) and GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DE 11)**

I.    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 10), **GRANT** Defendant's motion for summary judgment (DE 11),

and **AFFIRM** the Commissioner's decision.

II.    **REPORT**

       Plaintiff, Eva Lewis, brings this action under 42 U.S.C. § 405(g) for review

of a final decision of the Commissioner of Social Security ("Commissioner")

denying her applications for disability insurance (DI) and supplemental security

income (SSI) benefits.  This matter is before the United States Magistrate Judge for

a Report and Recommendation on Plaintiff's motion for summary judgment (DE

1

10), the Commissioner's cross motion for summary judgment (DE 11), and the administrative record (DE 7).

## A.    Background

Plaintiff filed her applications for DI and SSI benefits in September 2014, alleging that she has been disabled since August 23, 2014, as a result of a stroke, at age 50.  (R. at 174-182, 213, 216-222, 284.)  Plaintiff's applications were denied on February 18, 2015.  (R. at 79-118.)

On March 5, 2015, Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 138-139.)  ALJ Michael R. Dunn held a hearing on May 28, 2015, at which Plaintiff was represented by counsel and Vocational Expert (VE) Stephanie Lorey testified.  (R. at 30-78.)  On August 26, 2015, ALJ Dunn determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 8-29.)

Plaintiff requested review of the hearing decision.  (R. at 6-7.)  On September 15, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 2-5.)  Thus, ALJ Dunn's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on November 5, 2015. (DE 1.)

## B.    Plaintiff's Medical History

Plaintiff's medical records span the period from August 25, 2014 - when she was admitted to Hurley Medical Center in Flint, Michigan for a stroke – through April 23, 2015.  (R. at 318-722 [Exhibits 1F-17F].)  Although there are approximately 405 pages of medical records, of particular import here are:  the December 3, 2014 psychological consultative examination (CE) report of Matthew P. Dickson, Ph.D. (R. at 415-419 [Ex. 3F]), the December 4, 2014 CE report of Samiullah H. Sayyid, M.D. (R. at 420-426 [Ex. 4F]), and the February 2, 2015 psychological CE report of Carrie Gleason, Psy.D. (R. at 465-468 [Ex. 10F]). These will be discussed as necessary below.

### C.     Hearing Testimony

ALJ Dunn conducted a hearing on May 28, 2015, at which Plaintiff and VE Lorey testified.  (*See* R. at 30-78.)  As the instant appeal presents an undeveloped challenge to the ALJ's credibility determination, as discussed below, I will forego further summary of the testimony for the time being and only refer to it as necessary during the analysis.

### D.     The Administrative Decision[1]

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4); see also 20 C.F.R. § 416.920.  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?

At **Step 1** of the ALJ's decision denying benefits, he determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (R. at 14.)  At **Step 2**, the ALJ determined that Plaintiff has the following severe impairments:  status post stroke, mild left sided hemiparesis, hypertension, mild carpal tunnel syndrome (CTS), mild cognitive disorder, affective disorder, and anxiety disorder.  (R. at 14.)  At **Step 3**, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 14-15.)  At **Step 4**, the ALJ determined that Plaintiff had the RFC to perform the exertional limitations of light work, with some additional manipulative, postural, environmental and mental limitations.  (R. at 15-22, 22-23.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in

---

2.      Does the claimant suffer from one or more severe impairments?

3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

significant numbers in the national economy that Plaintiff can perform.  (R. at 23-24.)

###    E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.    Analysis

At the outset, the Court wishes to comment on the frustrating form of Plaintiff's motion for summary judgment.  Namely, while the motion *does* contain a "table of contents" and "index of authorities," it *does not* set forth the "issues presented" contemplated by E.D. Mich. LR 7.1(d)(2) ("Form of Required Briefs.").  (*See* DE 10 at 2-4.)  Nor does is the "argument" section delineated by subheadings

into the purported multiple arguments.  (DE 10 at 10-26.)  This leaves the Court

with a lack of clearly defined issues under its consideration.

   In any event, the body of Plaintiff's "argument" reveals *developed* disputes

with:  (1) the ALJ's evaluation of the opinion evidence related to Plaintiff's RFC,

and (2) a sentence six remand in light of Plaintiff's September 2015 hospitalization

for psychiatric, medical and allied health treatment.  (DE 10 at 10-26.)[2]  Consistent

with the Court's identification of the issues on appeal, the Commissioner argues

---

[2] Plaintiff's brief hints at a credibility argument, but it does not warrant full-blown
analysis by the Court.  By way of background, the ALJ determined that Plaintiff
"is not a fully credible witness."  In support of this conclusion, the ALJ cited,
among other things:  **(a)** SDM Schonle's notes about conversations with Plaintiff
(*see* R. at 83-88, 103-107), but found Plaintiff's vigorous follow up inconsistent
with Plaintiff's testimony that "she is unable to remember anything and her mind
just does not work[,]" further noting that, at the hearing, Plaintiff was "able to
remember things in detail[,]" **(b)** Dr. Gleason's CE report (R. at 465-467), and **(c)**
the April 23, 2015 physical therapy notes by Schlosser and/or Mays (R. at 714-
721).  Ultimately, the ALJ stated that Plaintiff's "subjective complaints are not
fully supported by the objective evidence and she is not a fully credible witness."
(R. at 21.)  Only a portion of one paragraph in Plaintiff's argument mentions
credibility.  (DE 10 at 20.)  However, Plaintiff's single statement that "[i]t is
perfectly logical to assume that [Plaintiff] simply could not remember those
conversations [with the SDM][,]" (DE 10 at 20), does not amount to a developed a
credibility argument, such as how the ALJ improperly considered "objective
medical evidence" or "other evidence" under the related regulation, 20 C.F.R. §§
404.1529(c)(2),(3), 416.929(c)(2),(3).  Instead, these references to credibility
appear to be part of Plaintiff's RFC "consistency" argument under 20 C.F.R. §§
404.1527(c)(4), 416.927(c)(4) rather than a separate challenge to the ALJ's
assessment of Plaintiff's credibility.  *See Kennedy v. Comm'r of Soc. Sec.*, 87 F.
App'x 464, 466 (6th Cir. 2003) ("issues which are 'adverted to in a perfunctory
manner, unaccompanied by some effort at developed argumentation, are deemed
waived.'") (quoting *United States v. Elder,* 90 F.3d 1110, 1118 (6th Cir.1996)).

for affirmance, asserting that substantial evidence supports the ALJ's RFC determination and Plaintiff has not established a basis for remand pursuant to sentence six of 42 U.S.C. § 405(g).  (DE 11 at 11-24, 24-25.)

> **1.    The ALJ properly considered the opinion evidence in determining that Plaintiff's RFC includes certain physical and mental health limitations.**

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. §§ 404.1527(b), 416.927(b).[3]  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

> **a.    Evaluating opinion evidence as to mental RFC**

Plaintiff's primary argument on appeal is that the ALJ did not properly weigh the opinion evidence with respect to her mental limitations.  (DE 10 at 10-

---

[3] On March 27, 2017, the Social Security Administration (SSA) will apply 20 C.F.R. §§ 404.1520c, 416.920c instead of 20 C.F.R. §§ 404.1527, 416.927.

26.)  As previously noted, the ALJ found that Plaintiff's Step 2 severe mental impairments included mild cognitive disorder, affective disorder and anxiety disorder.  (R. at 14.)  Then, at Step 4, the ALJ determined that Plaintiff's RFC included several mental limitations:  "only simple, routine and repetitive unskilled tasks performed at SVP 1 or 2 as defined in the Dictionary of Occupational Titles, free of fast paced production requirement with few, if any, work place changes;" "nothing more than simple work related decision;" and "only occasional interactions with supervisors, coworkers, and the public."  (R. at 16.)  In arriving at his Step 4 RFC determination, the ALJ made several specific assignments of weight with respect to Plaintiff's psychological records, three of which are important here:

- The ALJ assigned "great weight" to the January 5, 2015 Step III assessments of state agency psychological consultant Ashok Kaul, M.D.  (R. at 21, R. at 89-91, 93-95, 97 [Ex. 1A]; R. at 108-110, 112-114, 116 [Ex. 2A]; *see also* R. at 14-15 [Step 2].)

- The ALJ did not assign full weight to the December 3, 2014 CE report of Matthew P. Dickson, Ph.D. (R. at 22, 415-419 [Ex. 3F])

- The ALJ assigned "no weight" to the January 5, 2015 intake assessment by Geraldine Chaney, M.S.W.  (R. at 19, 450-453 [Ex. 7F], 514-540 [Ex. 13F])

- Although the ALJ did not make a specific assignment of weight to Dr. Gleason's February 2, 2015 consultative examination (CE) report, the ALJ expressly addressed it in his Step 4 RFC determination.  (R. at 19, 465-468 [Ex. 10F].)

(R. at 19-22.)[4]

As illustrated here, the ALJ properly considered the opinion evidence:

### i.    Ashok Kaul, M.D. (state agency psychological consultant)

The ALJ assigned "great weight" to Dr. Kaul's opinions regarding the "B"

Criteria of the Listings:  Plaintiff has *mild* restriction of activities of daily living;

*moderate* difficulties in maintaining social functioning and concentration,

persistence or pace; and *no* repeated episodes of decompensation, each of extended

duration.  (R. at 14-15, 90, 109.)  The ALJ also observed that Dr. Kaul's mental

RFC assessment found moderate limitations in Plaintiff's abilities to:  understand,

remember and carry out detailed instructions, maintain attention and concentration

for extended periods, interact appropriately with the general public, accept

instructions and respond appropriately to criticism from supervisors, get along with

coworkers or peers without distracting them or exhibiting behavioral extremes, and

respond appropriately to changes in the work setting.  (R. at 21; R. at 93-95; R. at

112-114.)  The ALJ stated that Dr. Kaul's opinion:

> . . . is accorded great weight with respect to moderate limitations in
> the broad areas of social functioning and maintaining concentration,
> persistence or pace.  The record *confirms* moderate limitations on
> memory and concentration testing (Exhibit 3F [R. at 415-419]) which

---

[4] For various reasons, the ALJ also assigned "no weight" to the March 3, 2015
opinion of Denise C. Will, N.P. of Hurley Mental Health.  (R. at 20, 560-570 [Ex.
13F].)  However, it is not separately addressed, as Plaintiff does not appear to
challenge this assignment of weight.

> is *consistent with* the residual effects of a stroke.  The record also
> indicates the claimant is irritable and goes off on people, which is
> *consistent with* moderate limitations with respect to social
> functioning.  Such limitations appear to be generally *consistent with*
> the record as a whole.

(R. at 21 (emphases added).)  It is clear that the ALJ relied on at least a part of Dr.

Dickson's CE report.  (R. at 21, 415-419.)  Furthermore, it appears the ALJ was

relying upon mental health therapist Chaney's January 5, 2015 notes observing an

"irritable mood," (R. at 19, 521 [Ex. 13F]) and Plaintiff's May 26, 2015 affidavit

that she "can 'go off' on people for no apparent reason . . . " and is "irritable."  (R.

at 15, 292, 294 [Ex. 12E].)  Thus, in assigning weight to Dr. Kaul's opinion, the

ALJ acted consistently with the directive that "the more consistent an opinion is

with the record as a whole, the more weight we will give to that opinion."  20

C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Plaintiff's references to Dr. Kaul do not change this conclusion.  First,

Plaintiff points out that Dr. Kaul rated Plaintiff "moderately limited" in certain

social interaction and adaptive areas.  (DE 10, R. at 93-95, 112-114.)  Plaintiff

attacks the foundation for this opinion, suspecting that Dr. Kaul disregarded Dr.

Dickson's December 3, 2014 finding of "marked impairment." (R. at 418.)

Plaintiff also suspects that Dr. Dickson's opinion "may have been disregarded <u>at</u>

<u>the administrative stage</u> because of Eva Brewster's failure to cooperate and respond

appropriately to the questions asked by Dr. Carrie Gleason when she administered

an intelligence test." (DE 10 at 12) (emphasis in original).[5] However, Dr.

Dickson's opinion is listed on the disability determination explanation form as

"evidence of record." (R. at 82, 101.) Thus, it seems to have been available to Dr.

Kaul when he conducted his record review. Moreover, while the disability

determination is dated February 18, 2015 (R. at 97, 116-118), Dr. Kaul's opinions

are dated January 5, 2015 - a date *before* Dr. Gleason's February 2, 2015 CE.

Thus, Dr. Kaul could hardly be accused of disregarding Dr. Dickson's opinion in

favor of Dr. Gleason's opinion, because Dr. Kaul's opinion predates Dr. Gleason's

opinion.

    Second, Plaintiff contends that Dr. Kaul "had only limited records available"

and "never interviewed or had any personal contact with [Plaintiff][.]" (DE 10 at

17.) These claims are unavailing. To the extent Plaintiff is claiming that Dr. Kaul

arrived at his January 5, 2015 opinion without the benefit of Dr. Gleason's

February 2, 2015 CE report, the ALJ properly addressed Dr. Gleason's opinion, as

discussed below. Moreover, to the extent Plaintiff urges the Court to recognize

that Dr. Kaul did not examine Plaintiff, Dr. Kaul as a licensed medical doctor may

"provide evidence to establish an impairment." 20 C.F.R. §§ 404.1527(a),

---

[5] In relevant part, Dr. Gleason wrote that, "It is my impression that she put forth inconsistent effort during the exam. The results obtained today are invalid. . . . This inconsistent effort was reflective of her effort throughout the exam. . . . It is my impression that this behavior is unrelated to the symptoms of her alleged mental condition and that she is more capable than her responses indicate today." (R. at 466-467.)

416.927(a).  Furthermore, though Dr. Kaul is a non-examining source, "[s]tate agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  Finally, the regulations provide for consideration of opinions by nonexamining sources:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source s medical opinion if the State agency medical or p[s]ychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96-6P (S.S.A. July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e). In assigning Dr. Kaul's opinion "great weight," the ALJ acknowledged that these were the opinions of a "State agency consultant" and "state agency psychological consultant."  (R. at 14-15, 90, 109; R. at 21, 93-95, 112-114.)  In other words, the ALJ expressly recognized that Dr. Kaul did not have a treating relationship with Plaintiff.  Thus, in considering Dr. Kaul's opinion, the ALJ considered the factor set forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("Treatment relationship.").

Third, Plaintiff contends that Dr. Kaul's opinion "is not consistent with the record as a whole[,]" and instead believes therapist Chaney's opinion should have been credited.  (*See* DE 10 at 17.)  However, as illustrated below, the ALJ properly discounted Chaney's January 5, 2015 opinion.

### ii.   Matthew P. Dickson, Ph.D. (Consultative Examiner)

Licensed psychologist Matthew P. Dickson, Ph.D., performed a CE of Plaintiff on December 3, 2014, and concluded :

> It is my impression that Eva is at least mentally capable of understanding, attending to, remembering, and carrying out instructions related to unskilled work-related behaviors.  Testing would be necessary to rule out a mild neurocognitive disorder. Based on today's exam, it is my impression that Eva's abilities to respond appropriately to co-workers and supervision and to adapt to change and stress in the workplace are *markedly impaired*.

(R. at 415-419 [Ex. 3F (emphasis added)].)  The ALJ decided that Dr. Dickson's opinion was not entitled to full weight "with respect to social functioning[,]" and explained:

> The claimant reported to Dr. Dickson she was able to get along with others, and he indicated the claimant was socially appropriate, despite being talkative.  There is nothing in the record, including Dr. Dickson's evaluation of the claimant, to indicate the claimant had *marked limitations* getting along with co-workers and supervisors.

(R. at 22 (emphasis added); *see also* R. at 18.)

Plaintiff claims that the ALJ did not properly weigh Dr. Dickson's opinion. Specifically, Plaintiff argues that Dr. Dickson is a specialist, who had access to

14

Plaintiff's DDS field office records and whose "markedly impaired" assessment is consistent with the record as a whole, including the February 2, 2015 CE report. (DE 10 at 11, 13, 19, 25; *see also* DE 10 at 12, 13, 15, 20 C.F.R. §§ 404.1527(c)(4),(5), 416.927(c)(4),(5).)  Nonetheless, Dr. Dickson's social functioning interview notes, among other things that "Eva says she generally gets along OK with others[,]" and "Eva is basically socially appropriate during this exam, but she talks excessively . . .[.]"  (R. at 416.)  – Thus, the ALJ had a good basis for finding Dr. Dickson's "markedly impaired" assessment internally inconsistent or exaggerated.  (R. at 22, 418.)  As such, the ALJ was permitted to discount his report.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

### iii.    Geraldine Chaney, M.S.W.

Chaney is Plaintiff's therapist at Hurley Mental Health.  (R. at 57.) Although her name appears on several of Plaintiff's medical records, it is Chaney's January 5, 2015 intake assessment (R. at 514-540; *see also* R. at 450-453)  which is at issue here.  Among other things, Chaney described Plaintiff's mood as dysphoric, anxious, irritable and distressed.  (R. at 519.)  Chaney diagnosed anxiety disorder and mood disorder and assessed Plaintiff's global assessment of functioning (GAF) score as 41-50, indicating "serious symptoms[.]"  (R. at 521.) In assigning this opinion "no weight," the ALJ explained:

> Ms. Chaney is not an acceptable source for opinion evidence and she
> did not provide a rational for that opinion.  The opinion was

>apparently based upon the single assessment.  It is also inconsistent
>with the great weight of the medical evidence and is given no weight.

(R. at 19.)

In comparison to the ALJ's assignment of great weight to non-examining

Dr. Kaul's opinion, Plaintiff suggests that the ALJ should have instead given

greater weight to therapist Chaney, particularly noting that, as a "mental health

therapist," Chaney is qualified to "make evaluations using DSM-IV Codes," "deal

with mental health issues," "render an opinion with regard to the mental state of

incoming, prospective patients," and "do intake work for Hurley Mental Health."

(DE 10 at 17, 25.)  Even though Plaintiff is asking this Court to turn its attention to

therapist Chaney's "specialization," presumably on the basis of 20 C.F.R. §§

404.1527(c)(5), 416.927(c)(5), the ALJ properly assessed her opinion.[6]  First, as a

therapist, Chaney is not an "acceptable medical source" or a source "who can

provide evidence to *establish* an impairment" as defined by 20 C.F.R. §§

404.1513(a), 416.913(a) (emphasis added).  Instead, Chaney is an "other source,"

whose opinion "*may*" be used "to show the severity of your impairment(s) and how

it affects your ability to work."  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)

(emphasis added); *see also* SSR 06-3p.  Second, "[t]he better an explanation a

source provides for an opinion, the more weight we will give that opinion."  20

---

[6] The text of this regulation changes on March 27, 2017, at which point the
regulation will be retitled, "Categories of evidence."

16

C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  The ALJ was thus permitted to disregard an opinion he found to be "inconsistent with the great weight of the medical evidence . . . ."  (R. at 19.)  Third, viewing these notes as a "single assessment," it is clear the ALJ properly considered and discounted on the basis of the extremely limited treatment relationship, at least to the extent this opinion was an "intake assessment," (*Id*.)  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Finally, the ALJ considered the "consistency" factor.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

It is true, as Plaintiff points out, that the ALJ *may consider* evidence from mental therapists like Chaney.  Plaintiff's suggestion that Chaney's  January 5, 2015 opinion is consistent with other items in the administrative record may also well be true.  Nonetheless, "it is within the ALJ's purview to weigh conflicting evidence."  *White v. Colvin*, No. 1:14CV255, 2015 WL 1011393, *12 (N.D. Ohio Mar. 6, 2015).  Conversely, it is not this Court's role to re-weigh it in a manner which Plaintiff finds more palatable.

### iv.    Carrie Gleason, Psy.D.

Licensed psychologist Carrie Gleason, Psy.D. performed consultative psychological testing and issued a report on February 2, 2015.  Among other things, Dr. Gleason opined that Plaintiff "put forth inconsistent effort during the exam[,]" and concluded that "[t]he results obtained today are invalid."  (R. at 465-467 [Ex. 10F].)  Although the ALJ did not make an express assignment of weight

as to Dr. Gleason's opinion, the ALJ did discuss Dr. Gleason's report.  (R. at 19.)

Moreover, within the credibility discussion, the ALJ considered Plaintiff's

responses to Dr. Gleason "bizarre and not consistent with any pathology, but are

consistent with intentional exaggeration . . . ."  (R. at 21.)

Plaintiff contends that Gleason's report is consistent with:  Dickson's

December 3, 2014 CE report regarding "stream of mental activity" and his

statement that Plaintiff's "abilities to respond appropriately to co-workers and

supervision and to adapt to change and stress in the workplace are markedly

impaired[,]" (R. at 415-419), as well as the September 4, 2014 observations at the

SSA field office that Plaintiff had an "extremely nasty disposition[,]" and was

described, among other things, as "agitated" and "argumentative," (R. at 213-215

[Ex. 1E]).  (*See* DE 10 at 12-14, 19, 20-21.)  However, it is clear the ALJ expressly

considered Gleason's CE report, and, "it is within the ALJ's purview to weigh

conflicting evidence."  *White v. Colvin*, No. 1:14CV255, 2015 WL 1011393, *12

(N.D. Ohio Mar. 6, 2015).

### b.     Evaluating opinion evidence as to physical RFC

While the crux of Plaintiff's argument relates to the ALJ's treatment of

opinion evidence regarding her *mental limitations*, Plaintiff's argument makes

some mention of her "physical capacities," such as problems with ambulation and

use of her upper extremities, and, thus, impliedly challenges the ALJ's

18

determination regarding Plaintiff's exertional, manipulative and postural limitations. (*See* DE 10 at 21, 24, 25.)

As previously noted, the ALJ determined that Plaintiff's RFC included the *exertional* limitations of "light work," as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with some further *manipulative* ("frequent use of left foot controls; frequent use of left hand controls; frequent left side handling; frequent left side fingering;"), *postural* ("occasional climbing of ramps and stairs; never climbing ladders and scaffolds; frequent balancing; occasional stooping, kneeling, crouching and crawling;") and *environmental* ("never working at unprotected heights; must avoid hazardous machinery; never operating a motor vehicle;") limitations. (*See* R. at 15-22.)[7] To the extent Plaintiff mentions her physical impairments, she contends that her need for a cane and balance limitations should have been taken into account, and specifically points to:

- The December 4, 2014 CE by internist Samiullah H. Sayyid, M.D., which the ALJ interpreted as requiring "no work restrictions" and to which the ALJ assigned "some weight." (R. at 18-19, 22, 420-426 [Ex. 4F].)

---

[7] By way of background, *exertional limitations* include lifting, carrying, standing, walking, sitting, pushing and pulling. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b). *Postural limitations* include climbing, balancing, kneeling, crouching and crawling *Ferrell v. Comm'r of Soc. Sec.*, No. 1:14-CV-1232, 2016 WL 316724, at *7 (W.D. Mich. Jan. 27, 2016) (citing SSR 96-9p (S.S.A. July 2, 1996)). *Environmental limitations* include extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, etc., and hazards (machinery, heights, etc.). (*See* R. at 92-93, 111-112.)

- • The March 12, 2015 progress notes of Carey Shea, N.P. of South Saginaw Internal Medicine, which document an order for a large base quad cane.  (R. at 20, 492-501 [Ex. 12F].)

- • The April 8, 2015 notes of Alycia Schlosser, P.T. of Hurley Family Rehabilitation Center, documenting an initial evaluation for physical therapy "due to Patient having balance problems with recent falls."  (R. at 683-691 [15F].)

(*See* R. at 21, 24-25.)[8]

Plaintiff specifically contends that, because she is "unsteady on her feet," was "prescribed a cane," was "diagnosed with bilateral carpal tunnel syndrome," and has "difficulties that affect her entire left side," the ALJ should have limited her to "no more than sedentary work . . . [,]" in which case she would meet the grid criteria for disability at age 50.  (DE 10 at 21.)  Nonetheless, to the extent Plaintiff is claiming that the capacities ascribed to her in terms of using upper extremities and balancing are inconsistent with the ALJ's other findings (DE 10 at 25), these arguments are unavailing.  First, Plaintiff has not explained *how* the Step 4 RFC physical limitations – exertional (light work), manipulative, postural or environmental – fail to account for her Step 2 severe physical impairments – status post CVA, mild left sided hemiparesis, hypertension, or mild carpal tunnel syndrome.

---

[8] Plaintiff also cites the January 15, 2015 letter from Mouaz Sbei, M.D. of the Flint Neurological Centre.  (DE 10 at 21, R. at 705.)  However, this reference appears to be a mistake, as this paragraph of Plaintiff's brief refers to her symptoms *following* the March 2015 cane prescription.

Second, the ALJ appropriately considered Plaintiff's need for an ambulatory aid by assessing the exertional limitations of light work and various postural limitations.  Presumably referring to the March 12, 2015 prescription for a cane, Plaintiff testified that she was placed on a cane approximately one month before the hearing; accordingly, the ALJ's opinion noted that Plaintiff "began using a cane in the month prior to her hearing."  (R. at 17, 44-45, 48, 492-501.)  Also, referring to Dr. Sayyid's December 4, 2014 CE report – which observed that Plaintiff "is not using any ambulatory aid such as crutches, walker or cane[,]" - the ALJ noted that Plaintiff "did not require a cane."  (R. at 18, 420-422 [Ex. 4F].)  Additionally, within his credibility discussion, the ALJ referenced the April 23, 2015 physical therapy notes of Mays and/or Schlosser, which observed that Plaintiff was "able to ambulate within clinic without AD [assistive device] and able to navigate narrow pathways . . . [,]" but was "unable to perform tandem or single leg stance when asked . . . ."  (R. at 21, 714-721 [Ex. 17F].)  Thus, the ALJ accurately observed that Plaintiff "was able to walk without a cane prior to" her recent prescription.  (R. at 21.)

Third, the ALJ appropriately discounted Dr. Sayyid's December 4, 2014 CE report by acknowledging that there was support in the record for exertional and environmental limitations.  (R. at 420-426 [Ex. 4F]).  In his report, Dr. Sayyid noted both in "history of present illness" and "ambulation" that Plaintiff was "not

21

using any ambulatory aid . . .[,]" and, he observed that Plaintiff had made a "full recovery" from her left-sided stroke "without any residual sequelae . . . ." (R. at 420-421.) In addition, Dr. Sayyid's December 11, 2014 "neurologic and orthopedic supplemental report" indicates that clinical evidence does not support the need for a walking aid (R. at 423-424) and the "range of motion" form seems to only show reduced measurements in "forward flexion" and "backward extension" of the hips. (R. at 425-426.) Nonetheless, in observing that Dr. Sayyid "opined the claimant required no work restrictions . . .[,]" the ALJ only assigned this opinion "some weight," concluding that "the record does support episodic tendency to drift to the left when walking, and possibly some dizziness." [9] Accordingly, the ALJ assessed weight limitations and hazards for safety, effectively considered the consistency factor of 20 C.F.R. §§ 404.1527(c)(4) / 416.927(c)(4) in discounting Dr. Sayyid's opinion, and provided resulting exertional and environmental limitations. (R. at 22; *see also* R. at 18-19.)

Finally, one further note about the postural limitations. Given the ALJ's acknowledgment that the record supports "episodic tendency to drift to the left

---

[9] The Court assumes the ALJ's support for drifting to the left when walking and dizziness was: **(a)** the 3rd Party Function Report completed by Plaintiff's husband, **(b)** Plaintiff's hearing testimony, and **(c)** perhaps even the April 23, 2015 notes of Michael Mays, L.P.T.A. (R. at 16-17, R. at 223-230 [Ex. 3E], R. at 52, 48-49, 77; R. at 714-721.) Also, the Court's own review of the record revealed cardiologist Syed Imran Ahmed, M.D.'s September 24, 2014 and March 24, 2015 diagnoses of dizziness. (R. at 405-406, 476-477, 471-473.)

when walking," and "possibly some dizziness[,]" (R. at 22), Plaintiff questions the ALJ's conclusion that she is capable of "frequent balancing."  (R. at 16, DE 10 at 24-25.)  Other than pointing to her April 8, 2015 referral back to physical therapy as evidence that she "continued to have problems with balance, falling . . ." following her March 12, 2015 cane prescription (DE 10 at 21), and other than pointing out a seeming inconsistency between the ALJ's conclusions that Plaintiff is limited to "frequent balancing" but exhibits "episodic tendency to drift to the left when walking and possibly some dizziness . . .[,]" (DE 10 at 24-25), Plaintiff has not shown how the ALJ's existing postural limitations fail to address her problems with balance.[10]  It is her burden to do so.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof[.]").

### c.    Conclusion

---

[10] It is worth noting that the February 11, 2015 physical RFC determination of single decision maker (SDM) Heidi Schonle only noted exertional and environmental limitations.  (*See* R. at 92-93, 111-112.)  True, "[a]ny findings made by an SDM are not to be used as opinion evidence at the appellate level, since SDMs, as laypersons, are not acceptable medical sources or non-medical sources of opinion evidence under 20 C.F.R. § 404.1513, § 404.1527(a)(2), or SSR 06–[0]3p."  *Arnold v. Comm'r of Soc. Sec.*, No. 13-13468, 2015 WL 477379, at *11 (E.D. Mich. Feb. 5, 2015).  Accordingly, the ALJ stated:  "The non-medical opinion the claimant was capable of restricted light work is generally *consistent with* the evidence of record including the claimant's good recovery from her stroke and findings on clinical examination, which were usually essentially normal (Exhibit 4F [R. at 420-426])."  (R. at 21 (emphasis added).)  However, at least as to the manipulative and postural limitations, the ALJ's Step 4 RFC determination was more restrictive.

Plaintiff having failed to show an error by the ALJ in his evaluation of the opinion evidence at Step 4 as to either Plaintiff's mental or physical impairments, the ALJ's decision should be affirmed.

### 2.    Plaintiff has not shown her entitlement to a Sentence 6 remand.

Plaintiff's motion is unclear as to whether she seeks a sentence 6 remand under 42 U.S.C. § 405(g), based upon her September 2015 hospitalization at Harbor Oaks Hospital.  Her motion seeks remand "pursuant to sentence 6 . . .[,]" (DE 10 at 1); her argument introducing the September 2015 records begins passively with "I would note," (DE 10 at 23); and the conclusion of her brief seeks remand "pursuant to *sentence 4* . . .[,]" (DE 10 at 26) (emphasis added).  Despite this lack of clarity, the Court will address such an argument in deference to Plaintiff.

In a Sentence 6 remand, "[t]he district court does not affirm, modify, or reverse the Secretary's decision[,]" and "it does not rule in any way as to the correctness of the administrative determination."  *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  Rather,

> . . . the court remands because *new evidence* has come to light that was *not available* to the claimant at the time of the administrative proceeding and that evidence *might have changed the outcome* of the prior proceeding. . . . The statute provides that following a sentence six remand, the Secretary must return to the district court to "file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon

24

which his action in modifying or affirming was based."  42 U.S.C. §
405(g).

*Melkonyan*, 501 U.S. at 98 (internal citation omitted) (emphases added).

Specifically, Plaintiff provides evidence that, in the short, thirteen-day time
period between her September 2, 2015 request for review of the hearing decision
(R. at 6-7) and the Appeals Council's September 15, 2015 denial of such request
(R. at 2-5), she was hospitalized for four days – from September 11, 2015 to
September 15, 2015 - and received psychiatric, medical and allied health treatment.
(*See* DE 10 at 28-33.)  According to Plaintiff, "at least as late as [September 15,
2015][,] she was unemployable."  (DE 10 at 25-26.)

While the Court is confident that, given the brief timing between her
September 2 application and the Appeals Council's September 15 denial, the
records of this hospital stay were "new" and "not available" to her to submit to the
Appeal's Council, it is less clear whether Plaintiff has successfully argued that
these records "might have changed the outcome" of the ALJ's decision.  "[W]here
new evidence is presented after the administrative hearing is closed, the 'court can
remand for further consideration of the evidence only where the party seeking
remand shows that the new evidence is *material*.'"  *Snider v. Comm'r of Soc. Sec.*,
328 F. Supp. 2d 703, 710 (E.D. Mich. 2004) (quoting *Wyatt v. Secretary of Health
and Human Services,* 974 F.2d 680, 685 (6th Cir.1992)) (emphasis added).  "In
order for the claimant to satisfy this burden of proof as to materiality, he must

25

demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Leveque v. Colvin*, No. CIV.A. 14-12096, 2015 WL 4601156, at *4 (E.D. Mich. July 31, 2015), *report and recommendation adopted*, No. 2:14-CV-12096, 2015 WL 5612016 (E.D. Mich. Sept. 23, 2015), *appeal dismissed* (Mar. 18, 2016).

Here, Plaintiff has not shown that the September 2015 inpatient psychiatric discharge summary from Harbor Oaks Hospital is material such that "there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim . . . ." *Sizemore*, 865 F.2d at 711.  Although Plaintiff notes that her admission and discharge diagnoses were the same (*see* DE 10 at 28, 32), she contends that:

> Obviously her stay in a mental health facility was helpful because it was an extremely supportive environment, but it is clear that she would be going back into the same environment that she had been in before, where she had not been able to cope, and that her ability to function in any normal way *has been and, obviously, continues to be extremely impaired*.
>
> . . . [and]
>
> Mrs. Brewster has continued to exhibit mental and emotional abnormalities, *which have become severe enough, at times*, to require more intensive treatment than she can acquire on an outpatient basis (See Exhibit A [DE 10 at 28-33]) and it is clear that at least as late as [September 15, 2015] she was unemployable.

26

(DE 10 at 23-24, 25-26 (emphases added).)

Nonetheless, her arguments as presented are unavailing. Preliminarily, I note that the ALJ's August 26, 2015 Step 3 discussion states, in part: "[t]he claimant has not required any psychiatric hospitalization and the record[s] do not indicate episodes of psychosis." (R. at 15.) Plaintiff does not challenge this finding. However, if Plaintiff is arguing that her condition has <u>deteriorated or worsened</u> since the Secretary's decision, the September 2015 evidence would be immaterial. *See Godsey v. Bowen*, 832 F.2d 443, 445 (7th Cir. 1987) ("The evidence here was immaterial to Mrs. Godsey's application, since the fact that her condition had deteriorated by 1986 does not show that in 1983 it was otherwise than found at the administrative hearing."), *Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir. 1986) (finding additional medical evidence from March 1985 immaterial to the Secretary's decision as of December 1983, where it did not "not reveal further information about the claimant's ability to perform light or sedentary work in December 1983[,]" even though Plaintiff argued that the evidence showed a worsening of his condition, as it did not "affect the Secretary's 1983 decision.") On the other hand, Plaintiff may be arguing that the September 2015 psychiatric hospitalization records evidence that her condition on or prior to the Secretary's decision had been <u>misdiagnosed</u>; in other words, "it shows that the claimant's condition at the time of the hearing was worse than it had

27

previously been diagnosed." *Kubitschek and Dubin*, *Social Security Disability, Law and Procedure in Federal Court* § 9:60 (2016).[11]  Plaintiff does not enlighten this Court as to whether she is arguing that this subsequent hospitalization record would establish a *change* in her condition *from* the time of the hearing or what her condition actually *was at* the time of the hearing.  Her argument that she "has continued to exhibit mental and emotional abnormalities, which have become severe enough, at times, to require more intensive treatment than she can acquire on an outpatient basis" does little to alleviate the ambiguity.  As this is the only instance of inpatient mental health care which has been brought to the Court's attention, her argument seems to suggest a *worsening or deterioration* of her condition, which is not a basis for remand.

To be sure, these hospital records contain references to what appear to be subjective medical history, such as a "Summary of Admitting Note," – including "stroke about a year prior," "problems with housing," "issues with violence *toward her*," – and "History of Presenting Illness," (DE 10 at 28, 30) (emphasis added), or various other histories listed on her "initial psychiatric evaluation" form (DE 10 at 31).  However, these records consist of an "inpatient psychiatric discharge

---

[11] *See*, *e.g.*, *Preston v. Secretary of Health and Human Services*, 854 F.2d 815 (6th Cir. 1988) (albeit in a case which does not discuss "materiality" and involves a dispute about the date of onset, a supplemental hearing was conducted on March 28, 1986, where "Dr. Crabbs *related back* many of his 1986 findings to his earlier consistent findings in February and August 1984.") (emphasis added).

summary" and an "initial psychiatric evaluation adult inpatient unit" documenting Plaintiff's September 11, 2015 admission through September 15, 2015 discharge – a time period post-dating the ALJ's August 26, 2015 decision.  Plaintiff has not shown how the September 2015 psychiatric hospitalization records prove her condition at the time of the hearing was worse than previously diagnosed, and, therefore, has not satisfied her burden on "materiality."  *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013) ("To obtain a sentence-six remand, a claimant has the burden to establish that there is (1) new evidence; (2) which is material; and (3) that there is good cause for the failure to submit it to the ALJ."). As at least one leading treatise has explained:

> . . . in order to convince a federal judge that evidence is material, the claimant may have to do more than simply submit medical records or reports which post-date the hearing, since such a submission, standing alone, will be insufficient to satisfy the materiality requirement.  The claimant will have to show the district judge exactly how the new evidence relates to her medical condition *at the time of the hearing*.

*Kubitschek, supra.,* § 9:60 (emphasis added).  Plaintiff has failed to do so here.

Moreover, in an effort to give Plaintiff the "benefit of the doubt," the Court has considered some other comments regarding "suicide" in the administrative record.  Indeed, while Plaintiff presented on September 11, 2015 after apparently self-reporting "significant depression and suicidality[,]" (DE 10 at 28)  and was discharged on September 15, 2015 with "no suicidal or homicidal thoughts" but "marginal" judgment and insight (DE 10 at 29), there were also occasions during

February 2015 and March 2015 when her suicide risk was noted to be "mild" or "moderate."  (R. at 558, 582, 575.)  Additionally, the records from her April 1, 2015 visit – seemingly with therapist Chaney and just two months before the May 28, 2015 hearing – revealed that Plaintiff denied suicidal ideations and her suicide risk was "minimal."  (R. at 584-592).  All of these pre-August 26, 2015 records were before the ALJ and presumably taken into consideration.  In addition, the "Summary of Hospital Treatment" notes from the post-hearing hospitalization memorialize "no suicidal thoughts" after treatment.  (DE 10 at 28.)  Therefore, I am not convinced that there is a "reasonable probability that the Secretary would have reached a different disposition of the disability claim . . . ." if this later hospitalization record were to be newly considered by the Appeals Council or the ALJ on remand.  *Sizemore*, 865 F.2d at 711.

## G.    Conclusion

I conclude that:  **(a)** the ALJ properly evaluated the opinion evidence as to Plaintiff's mental limitations, **(b)** the ALJ properly evaluated the opinion evidence as to Plaintiff's physical limitations, and **(c)** Plaintiff has not shown her entitlement to a Sentence 6 remand.  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 10), **GRANT** Defendant's motion for summary judgment (DE 11), and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: February 15, 2017          s/Anthony P. Patti
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document sent to parties of record on
February 15, 2017, electronically and/or by U.S. Mail.

                                  s/Michael Williams
                                  Case Manager for the
                                  Honorable Anthony P. Patti